AO 243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

06-80053

| **United States District Court** | District SOUTHERN DISTRICT OF FLORIDA, W.P.B DIVISION |
|---|---|
| Name of Movant SHELBY K. MOORE | Prisoner No. 71907-004 | Case No. 02-80074-CR-HURLEY |
| Place of Confinement FEDERAL CORRECTIONAL COMPLEX-USP-1, P.O. BOX 1033, COLEMAN, FLORIDA 33521-1033 | | |

UNITED STATES OF AMERICA        V.        SHELBY K. MOORE

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack United States District Court, and in for West Palm Beach County.

2. Date of judgment of conviction _____

3. Length of sentence_____

4. Nature of offense involved (all counts) Count 1, Conspiracy to possess w/intent to distribute 5 kilograms or more of powder cocaine and 50 grams or more of crack; Count 2 Conspiracy to possess w/intent to distribute 50 grams or more of crack cocaine; Count 3 Conspiracy to possess w/intent 5 kilograms or more of powder cocaine, Count 5 same, Count Poss. to dist. 5 grams, Count 6, 924(c)(1); Count 7 922(g)(1); Count 8

5. What was your plea? (Check one)
   (a) Not guilty    ☒
   (b) Guilty    ☐
   (c) Nolo contendere   ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

   _____

   _____

   _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury    ☒
   (b) Judge only    ☐

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

131
VPB

(2)

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:

    (a) Name of court __UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT__

    (b) Result __AFFIRMED__

    (c) Date of result __APRIL 27, 2004__

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____N/A_____

       (2) Nature of proceeding _____N/A_____

       (3) Grounds raised_____N/A_____

       (4) Did you receive an evidentiary hearing on your petition, application or motion?
       Yes ☐ No ☒

       (5) Result_____N/A_____

       (6) Date of result _____N/A_____

    (b) As to any second petition, application or motion give the same information:

       (1) Name of court _____N/A_____

       (2) Nature of proceeding _____N/A_____

       (3) Grounds raised_____N/A_____

AO-243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result _____ N/A _____

(6) Date of result _____ N/A _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐ No ☒
(2) Second petition, etc.     Yes ☐ No ☒

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ N/A _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege *facts*. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one:   INEFFECTIVE ASSISTANCE OF COUNSEL/PETITIONER IS ACTUALLY INN-

OCENT OF COUNT 1,2,3,and4 CONSPIRACY TO DISTRIBUTE FIVE KILOGRAMS OR MORE

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

**SEE ATTACHMENT**

_____

_____

_____

B. Ground two:   INTERVENING NEWLY RECOGNIZED RIGHT IN LIGHT OF BOOKER, BLAKELY

AND APPRENDI; PETITIONER WAS DEPRIVED OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

**SEE ATTACHMENT**

_____

_____

C. Ground three:   INEFFECTIVE ASSISTANCE OF COUNSEL/PETITIONER IS ACTUALLY

INNOCENT OF COUNT SIX: A VIOLATION OF 18 U.S.C. § 924(c)(1)

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

**SEE ATTACHMENT**

_____

D.  Ground four:  INEFFECTIVE ASSISTANCE OF COUNSEL FOR TRIAL AND APPELLATE
COUNSEL(S) TO RAISE IN THE DISTRICT COURT AND/OR FAILURE TO PRESERVE

Supporting FACTS (state *briefly* without citing cases or law): 

**SEE ATTACHMENT**

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so
presented, and give your reasons for not presenting them:  These claims are being presented because
both trial and appellate counsel failed to raise the petitioner's issue's in the
district court and/or on direct appeal, and the petitioner in good faith brings
the issue's before this Honorable Court under ineffective assistance of counsel.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☒ No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked
herein:

(a) At preliminary hearing ___James L. Eisenberg, ESQ.___

(b) At arraignment and plea ___James L. Eisenburg___

(c) At trial ___James L. Eisenberg___

(d) At sentencing ___James L. Eisenberg___

AO 243 (Rev. 5/85)

(e) On appeal _____

(f) In any post-conviction proceeding _____ N/A _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

N/A

(b) Give date and length of the above sentence: _____

N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☒

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

1-10-06
(date)

_____
Signature of Movant

(7)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SHELBY K. MOORE,                          CASE NO. 02-80074-CR-HURLEY
          PETITIONER,

V.

UNITED STATES OF AMERICA,
          RESPONDENT,

### PETITIONER'S BRIEF IN SUPPORT OF HIS ¶ 2255 MOTION SEEKING TO VACATE, SET-ASIDE AND CORRECT CONVICTION AND SENTENCE

COMES NOW, the petitioner, **Shelby K. Moore**, (hereinafter referred to as the defendant), pro-se, in the above styled and captioned cause and Respectfully Submits this Honorable Court with the following brief with memorandum of points and authorities and conclusions of law in support of his motion to vacate, set-side and correct conviction and sentence. The petitioner states the following to wit in support:

The petitioner presents this Honorable Court with facts and the law in support of his claims raised in supporting § 2255 application. This court, reviewing each claim should address the claims on the merits outside of the petitioner's failure to cite proper legal authorities, confusion of legal theories, poor syntax and sentence construction or the litigant's familiarity with pleading requirements. Overall, an evidentiary hearing should be held in the event any facts is in dispute with the respondents. See **Title 28 U.S.C. § 2246.**

WHEREFORE, the petitioner submits the following brief in support of his § 2255 motion seeking to vacate, set aside and correct conviction and sentence.

## ISSUES PRESENTED

A. **INEFFECTIVE ASSISTANCE OF COUNSEL/PETITIONER IS ACTUALLY INNOCENT OF COUNT 1,2,3,AND 4 CONSPIRACY TO DISTRIBUTE FIVE KILOGRAMS OR MORE OF A MIXTURE CONTAINING COCAINE AND 50 GRAMS OF A MIXTURE CONTAINING CRACK COCAINE; THE GOVERNMENT HAS FAILED TO MEET IT'S BURDEN OF PROOF, BECAUSE ALL ALLEGED CO-CONSPIRATOR'S WERE CONFIDENTIAL INFORMANTS..........**

B. **INTERVENING NEWLY RECOGNIZED RIGHT IN LIGHT OF BOOKER, BLAKELY APPRENDI; PETITIONER WAS DEPRIVED OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS TO HAVE A DETERMINE DRUG TYPE AND QUANTITY ELEMENTS, WHICH WAS NOT SUBMITTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT, STRUCTURAL ERROR HAS OCCURRED WHEN THE JURY WAS NOT ADEQUATELY INSTRUCTED ON ALL OF THE REQUISITE ELEMENTS......**

C. **INEFFECTIVE ASSISTANCE OF COUNSEL/PETITIONER IS ACTUALLY INNOCENT OF COUNT SIX: A VIOLATION OF 18 U.S.C. § 924(c)(1), POSSESSION OF A FIREARM DURING A DRUG TRAFFICKING OFFENSE, AS THE GOVERNMENT HAS FAILED TO PROVE BEYOND A REASONABLE DOUBT, THAT THE PETITIONER ACTIVE EMPLOYED THE FIREARM AS DEFINED BY BAILEY, AND THE JURY INSTRUCTIONS WERE CLEARLY ERRONEOUS............**

D. **INEFFECTIVE ASSISTANCE OF COUNSEL FOR TRIAL AND APPELLATE COUNSEL(S) FAILURE TO RAISE IN THE DISTRICT COURT AND/OR FAILURE TO PRESERVE FOR APPELLATE PURPOSES THE PETITIONER'S APPRENDI CLAIM WHERE THE DISTRICT COURT HAVE VIOLATED HIS FIFTH AND SIXTH AMENDMENT RIGHTS.....**

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment in part provides, in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense. The Sixth Amendment right to defense counsel in felony prosecutions is a fundamental right binding on the states through the Fourteenth Amendment as well. See **Strickland v. Washington,** 466 U.S. 688 (1984); **Gideon v. Wainwright,** 372 U.S. 335 (1963). The standard which must be applied in determining what constitutes ineffective assistance of counsel was set out in **Strickland,** at 689. The test in **Strickland** has two components, both which must be satisfied to establish that defense coun-

sel's performance was ineffective. **Id**. at 687.

This showing requires that defense counsel's errors were so serious as to deny the defendant of a fair and full trial whose result is reliable. To make this showing, the defendant must demonstrate that counsels errors or omissions were so serious as to deprive the defendant of a fair and full trial, a trial whose result is reliable. A court deciding an actual ineffective assistance of counsel claim must judge the reasonableness of counsel's challenged conduct on the facts of this particular case, viewed as of the time of counsels conduct. A convicted defendant making claims of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonableness judgment. The court must then determine, in light of all the circumstances the identified acts or omissions were outside the wide range of professionally competent attorneys assistance. **Id**. at 690. The Supreme Court recognized **Strickland**, that counsel bears a duty to make a reasonable investigation of law and facts in his clients case. **Id**. at 691.

Additionally, the ABA standard relating to the Administration of Criminal Justice Provides in pertinent part:

> "[i]t is the lawyers duty to conduct a prompt investigation of the circumstances, of the case and to explore all avenues leading to the merits of the case and the penalty in the event of conviction. The investigation should always include the efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused stated desire to plead guilty. Standard 4-4.1.

The Supreme Court has also established that the standard for ineffective assistance of counsel is the same for trial and app-

ellate counsel. See **Evitts v. Lucey**, 469 U.S. 387 (1985); and
**Matire v. Wainwright**, 881 F.2d 1430 (11th Cir. 1987). The Supreme
Court has also held that the failure of the petitioner to raise
his ineffective assistance of counsel claims of direct appeal
will not pose any procedural bars and/or default upon him from
raising them addressed and adjudicated in his § 2255 proceeding.
See **Massaro v. United States, supra.** The petitioner also bring's
to this Honorable Court attention that his § 2255 motion is not
procedurally barred, because the Supreme Court ruled that a claim
of actual innocence moves the AEDPA to correct the conviction of
one who is actually innocent. See **Engle v. Issac,** supra,

Counsel's failure to raise meritorious and/or stronger issues
of the petitioner's behalf in pre-trial, trial, sentencing, and
direct appeal. Counsel's performance and assistance fell outside
that wide range of competence required of attorney's representing
criminal defendant's in criminal cases. Based on counsel's defic-
ient performance and assistance in the district court and/or on
direct appeal, the petitioner has been prejudiced.

On the basis of counsel's failure to raise such issues on the
petitioner's behalf, specifically, when all of the issues were
clearly cognizable, and counsel have at least been preserved for
appeal at a very minimum, constitutes a clear and blantant act
of ineffective assistance of counsel. All of the claims raised
in the present motion are being presented at this present time
because of counsel's failure to raise these issues, rendering him
ineffective. All of the following issues should be addressed on
the merits.

**INEFFECTIVE ASSISTANCE OF COUNSEL**
**PETITIONER IS ACTUALLY INNOCENT OF COUNT 1,2,3, AND 4**
**CONSPIRACY TO DISTRIBUTE FIVE KILOGRAMS OR MORE OF A MIX-**
**CONTAINING COCAINE AND 50 GRAMS OF A MIXTURE CONTAINING**
**CRACK COCAINE; THE GOVERNMENT HAS FAILED TO MEET IT'S**
**BURDEN OF PROOF, BECAUSE ALL ALLEGED CO-CONSPIRATOR'S**
**WERE CONFIDENTIAL INFORMANTS:**

The petitioner contends that he has been deprived of his
Fifth and Sixth Amendment Rights directly under the Constitution,
steaming from counsel's deficient performance and assistance, the
petitioner has been erroneously convicted of Count 1,2,3, and 4,
Conspiracy to distribute five kilograms or more of a mixture con-
taining cocaine and 50 grams or more of a mixture containing crack
cocaine, the government has failed to meet it's burden of proof,
because all alleged **Co-Conspirator's were Confidential Informants**
and there existed no **Conspiracy,** making the petitioner actually
innocent of Conspiracy.

The Sixth Amendment right to counsel is the right to effect-
ive assistance of counsel. See **McMann v. Richardson,** 397 U.S. 759,
77, 90-S.Ct. 1441, 25 L.Ed.2d 763 (1970). Counsel can deprive a
defendant of the right to effective assistance of counsel by fail-
ing to render **"adequate legal assistance".** See **Cuyler v. Sullivan,**
466 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The pet-
itioner contends that his attorney's deficient performance and
assistance has resulted in the conviction of one who is actually
innocent of the crime.

The law has long been established that the miscarriage of just-
ice exception to cause serves as **"an additional safeguard against**
**compelling an innocent man to suffer an unconstitutional loss of**
**liberty."** See **Stone v. Powell,** 428 U.S. at 492-93, n.31, 49 L.Ed.

2d 1067, 96 S.Ct. 3037, guaranteeing that the ends of justice will be served in full. The Supreme Court has reasoned in numerous decisions that **"a claim of actual innocent are claims which are extraordinary when a constitutional violation has caused the conviction of one innocent of the crime."** We have described the class of cases as implicating a fundamental miscarriage of justice. See **Murry v. Carrier,** supra, at 485, 91 L.Ed.2d 397, 106 S.Ct. 2639.

Justice Blackmum, writing for himself, Justice Stevens, and Justice Souter, had noted the distinct possibility that the continued incarceration of an innocent person must have recourse to the judicial system. See **Herrera v. Collins,** 506 U.S. 390, 432, n.2, 113 S.Ct. 853, n.2, 122 L.Ed.2d 203 (1993)(Blackmum J., dissenting)(explaining that it may violate the 8th Amendment to imprison someone who is actually innocent...but declining to address the question, because the court was not asked to decide in that case whether petitioner's continued imprisonment would violate the constitution if he actually is innocent); **Id.** at 432-33.

In **Sawyer v. Whitely,** 505 U.S. 333, 120 L.Ed.2d 269, 112 S.Ct. 2514 (1992). The court dealt with the most lenient of the three possibilities which would be to allow the showing of **"actual innocence"** to extend not only to the elements of the crime, but also the existence of aggravating factors, and to mitigating evidence that bore not on the defendant's eligibility to receive the death penalty, but on the ultimate discretionary decision between the death penalty and life imprisonment.

In **Bousley v. United States**, 523 U.S. 614, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998). The court went beyond the generous exception in a certain class of cases; cases that have gone to trial. There we have held **"even in the absence of a showing of cause for the procedural default,"** habeas corpus relief will be granted; **"where a constitutional violation has probably resulted in the conviction of one who is actually innocent."** Schlup v. Delo, 130 L.Ed.2d 808, 115 S.Ct. 851 (internal quotation marks omitted).

The Supreme Court has long since recognized that it is an unacceptable deviation from our fundamental justice system to automatically prevent the assertion of actual innocence simple because a defendant has not observed procedural avenues available to him. In **Engle v. Isaac**, 456 U.S. 107, 135, 102 S.Ct. 1558, 1575-76, 71 L.Ed.2d 783 (1982)(the Supreme Court stated that since the concepts of cause and prejudice are not rigid, but **"take their meaning from ...principles of comity and finality...[i]n appropriate cases those principles must yield to the imperative of correcting a fundamentally unjust incarceration...[W]e are confident that victims of a fundamental miscarriage of justice will meet the cause and prejudice standard."** Id.

In **Murry v. Carrier**, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1985), the Court, although cautioning that it would not always be true, instructed that **"where a constitutional violation has probably resulted in the conviction of one who is actually innocent a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."**

-7-

To support a conspiracy conviction under Section 846, the gov-
ernment must prove (1) an agreement between the defendant and one
or more persons, (2) the objective of which is to do either an
unlawful act or lawful act by unlawful means. See **Toler**, 144 F.3d
at 1426.

Justice Jackson, 50 years ago, in discussing the development
of the law of conspiracy referred to Justice Cardozo's maximum
about **"the tendency of a principle to expand itself to the limit
of its logic."** See **Krulewitch v. United States**, 336 U.S. 440, 445,
69 S.Ct. 716, 719, 93 L.Ed.2d 790 (1949)(Jackson, J., concurring).
This case test the limit of the logic underlying conspiracy law.
The government's position **"stretches the bounderies of conspiracy
law to the breaking point."** **U.S. v. Townsend**, 924 F.2d 1385, 1391
(7th Cir. 1991). This case also does not even show the buyer and
saler relationship. In **U.S. v. Mercer**, 165 F.3d 1331 (11th Cir.
1999) the Court held: "The buy-sell transaction is simply not pro-
bative of an agreement to join together to accomplish a criminal
objective beyond that already accomplished by the transaction.
**Townsend**, 924 F.2d at 1394. On the other hand "[c]onspiracies,
**which are really "agreements to agree" on the multitude of dec-
isions and acts necessary to successfully pull off a crime, pose
and additional risk that the object of the conspiracy will be
achieved, and so warrant additional penalties."** **Townsend**, 924
F.2d at 1394. The essence of the conspiracy, then, is an agree-
ment, not the commission of the substantive offense. **Toler**, 144
F.3d at 1426. "Where the buyer's purpose is merely to buy and
the seller's purpose is merely to sell, and no prior contempor-

aneous understanding exists between the two beyond the sales agree-
ment, no conspiracy has been shown." See **United States v. Beasley**,
129 L.Ed.2d 869 (1994)(**citing United States v. Burroughs**, 99 L.Ed.
2d 442 (1988).

In the Case at bar, the facts and evidence initially was seized
in reference to an illegal stop, in which no probable cause existed
which justified the stop in the first instance, when a confident-
ial source, called the Riviera Beach Police on the petitioner, be-
cause the informant allegedly was pointing out drug dealers up at
the Imperial Plaza. On that same day which was April 3, 2002, the
petitioner was arrested for possession of cocaine 12.9 grams; and
possession of a .357 pistol be a convicted felon...**IBID**.

The petitioner bring's to this Honorable Court's attention
that initially the State of Florida, in and the Fifteenth Judicial
Circuit, for West Palm Beach, had charged the petitioner with the
above, there was never no allegations that the petitioner was
charged with anyone; nor committed no crime with anyone; nor con-
spired to commit any unlawful act with any of the Governments wit-
nesses, because they were all incarcerated on unrelated charges
in which the petitioner had nothing to do with. Steaming from
the charges in which the State of Florida has originally charged
the petitioner with, the petitioner was indicted for 4 counts of
Conspiracy and all of the alleged Co-Conspirator's were confiden-
tial informants. More problematic the prosecution created it's
own conspiracy theory by falsifying dates on which the conspiracy
was alleged to have taken place. Moreover, the petitioner will

show that his indictment is not a true bill, and is fatally defective and must be dismissed because the government lacked subject matter jurisdiction over the procedurally defaulted, barred, and out of the statute of limitations conspiracies in which the government has [**fraudulent concealment created on it's own notion**] infects the fundamental fairness and integrity of the court power to charge, prosecute and convict the petitioner of said offenses. Inasmuch, the petitioner clarifies that **Marrty Darrisaw** and **Timothy Lewis**, were incarcerated for **Armed Bank Robbery**, and that they were witnesses for the Government in the case of **Michael Chavers v. United States**, supra, in **1999**, the government knew not only were they seeking Sentencing Reductions for the perjurious testimony, by testifying falsely that the petitioner was selling them narcotics during the petitioner's trial. Thus, in an essence the **Bill of Particulars**, charged the following in reference to **Darrisaw** and **Lewis**: Count three Conspiracy to possess w/intent to distribute 5 kilograms or more of powder cocaine, January 16, 1998-December 1998, alleged co-conspirator's **Tim Lewis & Marty Darrisaw**; and Count four Conspiracy to distribute 5 kilograms or more of powder cocaine July 1998-1999. Evenmoreso, the petitioner reiterates the fact that in Count three: Conspiracy to distribute 5 kilograms or more of powder cocaine with Timothy Lewis and Marrty Darrisaw, the first date say's January 16, 1998-December 1998, it's the Government's contentions that the so-called conspiracy lasted until it's witnesses were incarcerated ....but not when the petitioner was first incarcerated...the December 1998, date does not have no date in which the so-called

bogus conspiracy had ended. Usually, when a defendant gets in-
dicted by a grand jury the first date starts with the date in
which he caught his charge, but this bogus conspiracy starts
with a date other than the actual date that he was initially
charged which should have been on April 3, 2002. Notwithstanding
the fact that the petitioner never was caught with Five Kilo-
grams or more of nothing, not even to mention 50 grams of coc-
aine base. No law enforcement officer testified at the petitioner's
trial that he had five kilograms of cocaine in his Mercedes Benz
or more less 50 grams. Where did the government get this evidence
from???,it created its own evidence, the petitioner has unmasked
the fraudulent concealment and perjurious testimony the governments
confidential informants, who was willing to testify to anything
in hopes of a Sentencing Reduction. Not one witness, nor the
prosecution presented Five Kilograms or 50 grams period before
the petitioner's jury at his trial, and the government, should
have not permitted such erroneous testimony to pass uncorrected
after knowing it's falsehood, violated the petitioner's due pro-
cess right and his right to a fair trial, because prior to the
petitioner's trial the government knew that **Apprendi v. New Jer-
sey,** allowed drug type and quantity elements to be presented to
the jury, there is no such amounts of drugs that exceeds 12.9gm
which was illegally seized from the petitioner's Mercedes Benz,
and there was never no conspiracy, and this Court has been a
victim of fraud, and it is the Court's duty to investigate the
fraud. See **Universal Oil Products Co. v. Root Refining Co.,**
328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed.2d 1447 (1946).

However, Marty Darrisaw; Timothy Lewis, Carl Williams, Der-
rick Allen, Pierre Roseau and Willis, were all working in conjun-
ction with the government by testifying falsely in hope for a §§
5K1.1, or Route 35(b), notwithstanding the fact that the petiti-
oner was only caught in possession of 12.9 grams of cocaine base,
thus, the government witnesses testified to drug amounts that were
so outraguous that the district court adopted the Report and Rec-
ommendation (PSI) and calculated the petitioner's sentence on
quantities of drugs that the jury was never permitted to use to
adequately determine the petitioner's guilt or innocence.

It is well established law that a person cannot conspire with
a government agent or confidential informer who secretly intends
to frustrate the conspiracy. See **United States v. Richardson**, 764
F.2d 1514, 1529 (11th Cir.) cert. denied,____U.S.____, 106 S.Ct.
320, 88 L.Ed.2d 303 (1985); **Sears v. United States**, 343 F.2d 139,
142 (5th Cir. 1965).

It is true that a conviction obtained by the use of perjury
testimony violates due process when a prosecutor knowingly uses
false testimony and there is any reasonable likelihood that the
false testimony could have affected the judgment of the jury. See
**Giglio v. United States**, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.
Ed.2d 104 (1972); **Napue v. Illinois**, 360 U.S. 264, 271, 79 S.Ct.
1173, 1178, 3 L.Ed.2d 1217 (1959); **Brown v. Wainwright**, 785 F.2d
1457, 1464 (11th Cir. 1986)(holding that a new trial is required
when the government knowingly use **"false testimony"**. (Recognizing
the **"principle that a State may not use false evidence, including
false testimony, to obtain a tainted conviction."** Prosecution Mis-

conduct occurs, **"not only where the prosecution uses perjury testimony to support its case, but also where it uses evidence which it knows creates a false impression of a material fact."** See **Hamric v. Bailey,** 386 F.2d 390, 394 (4th Cir. 1967). See also **United States v. Boyd,** 55 F.3d 239, 243 (7th Cir. 1995); **United States v. Iverson,** 205 U.S. App. D.C. 253, 637 F.3d 799, 805 (D.C. Cir. 1980); **Wayne R. Lefave,** et.al. Criminal Procedure 497 (1999)("As lower courts have noted, [it matters not whether the witness giving false testimony was or was not intentionally lying). If the prosecution knows that the witnesses statements is untrue, it has a duty to correct it").

The impact of unduly passion and prejudice in which denied the petitioner of his right to a fair and impartial trial, and his due process rights. The petitioner clearly points out that his trial attorney was ineffective for failing to move to dismiss the double jeopardy conspiracy counts of convictions. The prosecutor never proved that the petitioner entered into an agreement with all of it's incarcerated government informants, due to the fact that it's **case-in-chief** was based upon a **myth** something that never actually existed, which substantially prejudiced the petitioner, and tainted the minds of the jury. The mere factors that the government's witnesses testified that they knew the petitioner, but, mere acquaintance or knowledge of the petitioner prior bad acts does not constitute conspiracy, absent the requisite **Actus Reus** and **Mens Rea**; the petitioner is actually innocent of all the counts in the bogus conspiracy. See e.g. **Townsend,** 924 F.2d at 1394. The petitioner had nothing to gain from the

the government's witnesses, because, he was free and all of the government's witnesses were all incarcerated on unrelated charges. Thus, when the informants heard about the petitioner was arrested at the Imperial Plaza, all of the government witnesses alleged to have been in a conspiracy with the petitioner, and the government created the entire bogus conspiracy, and allegedly gives all of it's witnesses immunity. The petitioner contends that each and every conspiracy in which the government erroneously charged him with is product of **[Fraudulent Concealment]**. See **Hazel-Atlas Glass Co. v. Hartford-Empire Co.,** 88 L.Ed. 1250 (1941); See also **Gonzalez v. Secretary For Dept. of Corrections,** 366 F.3d 1253 (11th Cir. 2004); **Rodriquez v. Mitchell,** 252 F.3d 191, 199 (2001); **Harre v. City of Hammond,** 750 F.2d 1501 (11th Cir. 1985), vacated in part, 866 F.2d 1303 (11th Cir. Cir. 1989)(remanding for a new trial upon demonstration that defense expert witness may have committed perjury during trial); and **Assmann v. Fleming,** 159 F.2d 332, (8th Cir. 1947)(noting possibility for relief, irrespective of whether the fraud is considered **"extrinsic"** or **intrisic").**

Also relevant to the instant case drug type and quantity were elements in wake of **Apprendi v. New Jersey,** thus, this case has to be remanded back to the district court for a evidentiary hearing for the following reasons as set out below.

First and furthermost, the petitioner's Trial and Appellate attorney's performance and assistance was constitutionally deficient and defective, their omissions prejudiced the defense, especially the petitioner's trial attorney's ineffectiveiness for fail-

ing to put the government to it's burden of proof, in which both
attorney's knew that the Supreme Court Ruling in **Apprendi v. New
Jersey,** was so instructive, because it required the government
to prove drug type and quantity elements beyond a reasonable doubt;
deprived the petitioner of a fair trial and his Fifth and Sixth
Amendment Right. Second, none of the government's witnesses pre-
sented no drugs to the DEA and/or Janice LeClainche during the
date in which the bogus indictment alleges during the conspiracy
time frame...e.g....during the time that they were free in 1997,
1998, 1999, 2000, 2001, and 2002, that may have came from the pet-
itioner during the so-called **falsus in omnibus conspiracy.** Third,
the prosecution created it's own conspiracy theory and decided to
take matters into her own hands although the evidence did not fit
**"stretched the bounderies of conspiracy law to the breaking point."**
(**citing U.S. v. Townsend,** 924 F.2d 1385, 1391 (7th Cir. 1991);
See also **Mercer,** 165 F.3d 1331 (11th Cir. 1999).

Fourth, the prosecution should have never been allowed to
make up falsifying evidence in which she knew was false and unre-
liable, but, allowed it to pass uncorrected violated the petition-
er's due process rights, and his right to a fair trial. Fifth, the
petitioner brings to this Honorable Court's attention that all of
the drugs that the prosecution made up and also allowed it's wit-
nesses to testify falsely about, knowing that they were incarcer-
ated; and the petitioner had nothing to do with their crimes, now
the prosecutions has to produce the drugs or dismiss all of the
bogus conspiracy counts of conviction 1-4, in their entirety or
it has knowingly and intentionally committed a fraud upon the

Court, before and/or after the fact, the petitioner is actually innocent and has been erroneously convicted based upon incompetent evidence for a non-existent offense. "There is a reasonable likeihood, that had the jury be aware of the prosecutions bogus conspiracy theory, **"there is a reasonable probability that the outcome of the proceedings would have been different"** [here the petitioner's trial would have been different] because no reasonable jury would have convicted the petitioner on the conspiracy,(citing **Schlup v. Delo, supra,** 130 L.Ed.2d 808)(which held that it is more likely than not that a jury would not have convicted the petitioner).

For the following reasons stated in the present argument the petitioner is entitled to relief and a evidentiary hear.

### INTERVENING NEWLY RECOGNIZED RIGHT IN LIGHT OF BOOKER, BLAKELY, AND APPRENDI; PETITIONER WAS DEPRIVED OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS TO HAVE A JURY DETERMINE DRUG TYPE AND QUANTITY ELEMENTS, WHICH WAS NOT SUBMITTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT, STRUCTURAL ERROR HAS OCCURRED WHEN THE JURY WAS NOT ADEQUATELY INSTRUCTED ON ALL OF THE REQUISITE ELEMENTS

The petitioner contends that he has been deprived of his Fifth and Sixth Amendment Right to have a jury determine drug type and quantity elements, which was not submitted to the drug and proven beyond a reasonable doubt, or admitted by the defendant, structural error has occurred requiring the petitioner's conviction and sentence being vacated and resentencing is mostcertainly warranted in this matter. The petitioner asserts that the law is clearly established and well settled in light of **Apprendi v. New**

**Jersey,** 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

In **Booker,** the Supreme Court excised the two parts of the Sentencing Reform Act that rendered the mandatory Guidelines system Unconstitutional: the part in 18 U.S.C. § 3553(b)(1) making the Guidelines result binding of the Sentencing Court; and the part in 3742(e) requiring **de novo** review of sentences on appeal. **Booker,** 125 S.Ct. at 764. In doing so, the Supreme Court stated that "[w]ith these two sections excised (and statutory cross-ref erences to the two sections consequently invalidated), the remainder of the Act satisfies the Court's Constitutional requirement." **Id.** The Supreme Court in **Booker** instructed that its remedial holding applies to cases on direct review. **Id.** at 769 **("We must apply today's holdings-both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act-to all cases on direct review.")**

Nor is it a serious problem for initial habeas corpus petitions. See **Schriro v. Summerlin,** 542 U.S.____,159 L.Ed.2d 442, 142 S.Ct. 2519 (2004) provides compelling support for **Booker's** retroactivity to initial habeas cases. Although the Supreme Court in **Summerlin** rejected retroactivity of its new procedural rule announced in **Ring v. Arizona,** 536 U.S. 584, 153 L.Ed.2d 556, 122 S.Ct. 2428 (2002)(holding a jury, not a judge, must make the findings necessary to impose the death penalty), it did so because the possibility of inaccuracy was minimal in that both factfinders there were required to use the same beyond a reasonable doubt standard. Pre-**Booker,** on the other hand, judges determined sentencing enhancement factors by the preponderance of the evidence standard. Post-**Booker**-those facts must be both determined by a jury and proved

beyond a reasonable doubt. Accordingly, pre-**Booker** the factfind-
ing process so **"seriously diminished accuracy as to procude an
impermissibly large risk of injustice."** **Summerlin**, 159 L.Ed.2d
at 45 (emphasis original).

The **Booker**-rule which remedied that risk is therefore very
likely exempt from the **Teague v. Lane**, 489 U.S. 288, 103 L.Ed.2d
334, 109 S.Ct. 1060 (1989) retroactivity bar under the watershed
rule of criminal procedure exception. **See, e.g. InRe Winship**, 397
U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970); **Ring v. Arizona**,
536 U.S. 584, discussed in **Summerlin**.

**Booker** invalidated the Guidelines both on a Sixth Amendment
jury trial violated as well as the **Apprendi v. New Jersey**, 530
U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000) due process doc-
trine. Jointly those basis compel retroactivity. **See e.g. InRe
Winship**, 397 U.S.; **Ring v. Arizona**, 536 U.S. 584; *See also* **United
States v. Hernandez**, 137 F.Supp.2d 919, 931-32 (N.D, Ohio 2001)
rev'd in **United States v. Luciano**, 311 F.3d 146 (2nd Cir. 2002);
and **United States v. Murphy**, 109 F.Supp. 1059, 1064 (D.Minn. 2000)
rev'd in **Murphy v. United States**, 268 F.3d 599 (8th Cir. 2001).
Therefore, **Summerlin's** reliance on **DeStefano v. Woods**, 392 U.S.
631, 20 L.Ed.2d 1308, 88 S.Ct. 2093 (1968)(per curimum)(refusing
to give retroactive effect to **Duncan v. Louisiana**, 391 U.S. 145,
20 L.Ed.2d 491, 88 S.Ct. 1444 (1986)(applying Sixth Amendment
jury trial guarantee to the states) to reject retroactivity is
inconsequential to **Booker's** retroactivity. In **DeStefano** like
**Summerlin**, the factfinding standard on which retroactivity was

the same, only the factfinder differed. **Booker** changed those
standards exactly as did **InRe Winship**, 397 U.S. at 363-64, 25
L.Ed.2d at 375 (requiring juvenile charges be proved by proof
beyond a reasonable doubt instead of preponderance, reasoning
the reasonable doubt standard "is a prime instrument for reduc-
ing the risk of convictions resting on factual error. The stand-
ard provides concrete substance for the presumption of innocence
that bedrock **"axiomatic and elementary"** principle whose enforce
ment lies at the foundation of the administration of our criminal
law). Because the foundation of **Booker's** New Rule of constitutional
law rests on both the **Apprendi** due process doctrine and the **InRe
Winship**, Sixth Amendment right to jury trial with respective be-
yond a reasonable doubt proof standard, retroactivity to initial
habeas petition should not present no great problem.

First, **Booker** specifically declared "both the Sixth Amendment
holding and [its] remedial interpretation of the Sentencing Act
[retroactive] to all cases on direct review." Breyer, J., Slip
Op. at 25. Instead of limiting retroactivity only to cases on
direct review, like Mr. **Booker's** and **Mr. Fanfan**, by that state-
ment the Supreme Court more likely made **Booker** retroactive to
all cases.

This is so because **Booker's** Sixth Amendment New Rule simply
"reaffirmed [its] holding in **Apprendi**: [that] any fact (other
than a prior conviction) which is necessary to support a sentence
exceeding the maximum authorized by the facts established by a
plea of guilty or a jury verdict must be admitted by the defend-

ant or proved to a jury beyond a reasonable doubt." **Id.** Stevens, J., Slip Op. at 20. That rule is but a magnification of its **InRe-Winship,** 397 U.S. 358, 25 L.Ed.2d 368 rule "that the Constitution protects every criminal defendant" against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." **Booker,** Stevens, J., Slip. Op. at 5.

In **Ivan v. City of New York,** 407 U.S. 203, 205, 32 L.Ed.2d 569, 661-62, 92 S.Ct. 1951 (1972)(per curium) the Supreme Court declared **InRe Winship** must "be given complete retroactive effect." **Ivan V** was also a direct appeal case like **Booker.** However, the Supreme Court's declaration left no doubt its retroactivity declaration meant retroactivity to all cases, final or otherwise. Proof of it is in the several habeas cases in which the Supreme Court subsequently applied variations of its **InRe Winship rule,** See e.g. **Yates v. Evatt,** 500 U.S. 391, 114 L.Ed.2d 432, 11 S.Ct. 1184 (1991)(applying rule in **Sandstorm v. Montana,** 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979) that jury instructions on malice or intent violated due process by relieving the State's burden of proving every element beyond a reasonable doubt as required by **InRe Winship**); **Franklin v. Franklin,** 471 U.S. 307, 85 L.Ed.2d 344, 105 S.Ct. 1965 (1985)(applying **Sandstorm v. Montana,** 442 U.S. 510, in burden shifting instruction in violation of **InRe Winship** principle); **Jackson v. Virginia,** 433 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979)(applying **InRe Winship** rule to insufficiency of evidence standards of review in federal habeas corpus proceedings).

-20-

Second, by so applying the **InRe Winship**-type rule to multiple habeas cases, the Supreme Court has arguable also **de facto** applied its **Booker** constitutional rule through those past cases. If **Booker** and **InRe Winship** are rules of the same type, application of one to habeas proceedings is application of the other thus making both retroactive under **Tyler v. Cains** application retroactivity method. **Id.** 533 U.S. at 655, 150 L.Ed.2d at 645. But, cf. **InRe Turner,** 267 F.3d 225 (3rd Cir. 2001)(rejecting same argument as to **Apprendi**).

Third, it is similarly possible the Supreme Court has made its **Booker**, constitutional rule retroactive through its multiple holdings because it held in Case One **[Ivan V.,** 407 U.S. at 205, 32 L.Ed.2d at 661, 62 that [the **InRe Winship,** type of rule applies retroactively to cases on collateral review and [held] in Case Two **[Booker]** that [its] rule of the particular type, then its necessarily follows that the **[Booker]** rule applies retroactively to cases on collateral review." **Tyler v. Cain,** 533 U.S. at 668-69, 150 L.Ed.2d at 646 (O'Connor, concurring). But, **InRe Turner,** 267 F.3d 225 (rejecting same argument as to **Apprendi**).

Fourth, **Booker** has arguable made its rules retroactive through its Guideline clarifying amendments. It is well established Guideline clarifying amendments are retroactive. See, e.g. **United States v. Garcia-Cruz,** 40 F.3d 968, 990 (th Cir. 1994)("Under the law of our circuit, amendments to the Sentencing Guidelines which are "clarifying" as opposed to "substantive" may be given retroactive effect'); See also **United States v. Stinson,** 30 F.3d 121, 122 (11th Cir. 1994)(per curium)(collecting cases). **Booker** made

no substantive changes to the Guidelines. It merely interpeted
them (Breyer, J. Slip. Op. at 25)("our remedial interpretation
of the Sentencing Act) advisory as "Congress would have intended"
**Id.** pg.2) had it known its mandatory provisions violated the Sixth
Amendment right to jury trial. **See also Id., pg. 22**)("Hence we
have examined the statute in depth to determine Congresses" likely
intent in light of today's holding")(emphasis original).

   **Booker's** amendment accordingly merely clarified Congress in-
tent in light of its Sixth Amendment holding. Had **Booker "super-
impos[ed] its [Sixth Amendment Constitutional]** requirement anno-
unced [therein" **"(Id. pg.3)** "engrafting the Court's constitutional
requirement onto the Sentencing Statutes, [it] would have subst-
antively destroyed the system []"(**Id. pg.9).** Such substantive
change would have produced unintended identical punishment for
different degrees of similar crime **(Id)** and vise-versa **(Id. pg 10)**
thus destroying Congress goal of sentence uniformity **(Id).** Because
the **Booker** Sentencing Reform Act Amendments did not change the
Guidelines substantially, but merely interpreted them as advisory
instead of mandatory, such amendment is only a clarifying amend-
ment necessarily retroactive. Retroactivity of such changes in
the post-conviction process is hardly a problem. **See e.g Collins
v. Youngblood,** 497 U.S. 37, 111 L.Ed.2d 30, 110 S.Ct. 2715 (19900
(Stevens, J., concurring).

   In the Case at bar, the petitioner was charged with a (10 Count
Indictment); Count 1, charged to wit: Conspiracy to possess w/
intent to distribute 5 kilograms or more of powder cocaine and

50 grams or more of crack cocaine from July 1997-August 9, 2000, Poerre Roseau and Derrick Allen; Count 2, Conspiracy to posses w/intent to distribute 50 grams or more of crack cocaine, December 1997-January 2000, Carl Williams/Willis; Count 3, Conspiracy to possess w/intent to distribute 5 kilograms or more of powder cocaine-January 16, 1998-December 1998, Tim Lewis and Marty Darrisaw (Tallahassee); Count 4, Conspiracy to possess w/intent 5 kilograms or more of powder cocaine-July 1998-June 1999, Marty Darrisaw (Martin County/Fort Pierce); Count 5, Possession w/intent to distribute 5 grams or more of crack cocaine within 1000 feet of a school; Count 6, Possession of a firearm in furtherance of the drug trafficking crime-April 3, 2002-Imperial Plaza, Riviera Beach; Count 7, Possession of a firearm while being a fugitive from justice April 3, 2002-Imperial Plaza, Riviera Beach; Count 8 possession of ammuntion while being a fugitive from justice, April 3, 2002,-Imperial Plaza, Riviera Beach; Count 9, possession of a firearm after having been convicted of domestic violence misdemeanor,-April 3, 2002-Imperial Plaza Beach; Count 10, Possession of ammuntion after having been convicted of domestic violence misdemeanor, April 3, 2002-Imperial Plaza, Riviera Beach.

The petitioner attacks each and every count of conviction under **Booker,** specifically all of the drugs counts, because these counts of conviction violates the law in **Booker.** The **Booker** decision only clarified the law in **Apprendi,** which held: **[that]** any fact **(other than a prior conviction)** which is necessary to

support a sentence exceeding the maximum penalty authorized by
the facts established by a plea of guilty or a jury verdict must
be admitted by the defendant or proved to a jury beyond a reason-
able doubt." **Id.** Thus, in the case at bar, the petitioner's stat-
utory maximum was violated, because there only existed 12.9 grams
of cocaine base, yet, in still the petitioner was convicted for
Counts in which the jury did not see and/or determine necessary
drug amounts exceeding 12.9 grams, but the petitioner was erron-
eously convicted based upon his trial attorney's incompetence
and performing ineffectively. The Supreme Court's decision in
**Apprendi,** is so instructive here, as the law was clearly establ-
prior to the petitioner's trial, in which the government was re-
quired to submit, drug type and quantity elements to the jury to
be proven beyond a reasonable doubt. The main problem, here, is
that his trial attorney's poor assistance and performance allowed,
the government to convict the petitioner based upon incompetent
evidence, so in a essence the petitioner's attorney actually eased
the government's burden of proof. Because, although the indictment
charged large quantities of cocaine and cocaine base, **Booker**-type
error is present, due to the fact that all of the drug's that the
government's witnesses testified to at the petitioner's trial, the
jury was never submitted 5 kilograms or more of cocaine and/or
50 grams or more of crack cocaine, yet the petitioner's statutory
maximum was sky rocketed because, at Sentencing the district court
adopted the Report and Recommedation of the Probation Officer, and
use the preponderance of the evidence and imposed the petitioner
a erroneous sentence of 30 years, which is contrary to the law

-24-

established in **Apprendi, Blakely,** and **Booker.**

Section 2D1.1 of the Sentencing Guidelines provides a base of-fense level for all drug offenses. Pursuant to the Sentencing Gui-delines Manual, 12.9 grams of crack coaine established a base of-fense level of 26, and according to the Sentencing Table the pet-itioner's Sentencing range should have been **(70-87)** months of imprisonment, not a base offense level of (38) which was obtained by the district court for Sentencing purposes.

The petitioner asserts that structural error has occurred where his criminal could not reliably serve its function as a vehicle for determining guilt or innocence, and no criminal punishment may be regarded as fundamental fair. See **Rose v. Clark,** 478 U.S. 570, 577-78, 106 S.Ct. 3101-06, 92 L.Ed.2d 460 (1960); **See also Calfornia v. Roy,** 519 U.S.____. 136 L.Ed.2d 266, 117 S.Ct. 337 (1996)(noting that an error in the instruction that defined the crime is as easily characterized as a misdiscription of an ele-ment.

The petitioner has a constitutional right to have the jury determine guilt on all of the elements of his offense, long before the decision's in **Apprendi, Blakely,** and **Booker** cases were ever decided, thus, the Fifth and Sixth Amendment Right should have been binding on the petitioner's trial from the very begining. See **Sullivan v. Lousiana,** 113 S.Ct. 2083; and **InRe Winship,** 397 U.S. 358)(rather the question here is not whether the **Booker's** decision is retroactive, but rather the petitioner was deprived of his constitutional protections from the onset of his trial). A defendant "may assuredly insisted upon observance of struct-

ural guarantees even when the evidence him is so overwhelming to establish guilt beyond a reasonable doubt. See **Cerella v. California**, 491 U.S. 263, 268, 109 S.Ct. 2419 (1989).

As stated by the petitioner, the Supreme Court has only re-affirmed its ruling in **Apprendi,** and has only extended its **Apprendi** ruling in **Blakely,** and **Blakely** has only clarified the law in **Booker.** The **Blakely** decision clarified that "all facts legally essential to the punishment must be charged in the indictment, submitted to the jury or admitted to by the defendant, and proven beyond a reasonable doubt." **Id.** Thus, **Blakely** has also reaffirmed the Fifth and Sixth Amendment right to a jury trial, and further clarified that **"no longer can a defendant be sentenced on allegations and/or alleged facts extracted after trial from a present-encing report, compiled by a probation officer, and determined by a judge."**

For the following reasons stated in the present argument the petitioner's sentence must be vacated and the case ordered back to the district court for an evidentiary hearing.

**INEFFECTIVE ASSISTANCE OF COUNSEL**
**PETITIONER IS ACTUALLY INNOCENT OF COUNT SIX: A VIOLATION OF 18 U.S.C § 924(c)(1), POSSESSION OF A FIREARM DURING A DRUG TRAFFICKING OFFENSE, AS THE GOVERNMENT HAS FAILED TO PROVE BEYOND A REASONABLE DOUBT, THAT THE PETITIONER ACTIVELY EMPLOYED THE FIREARM AS DEFINED BY BAILEY AND THE JURY INSTRUCTIONS WERE CLEARLY ERRONEOUS:**

The petitioner contends that Count Six, of his charging indictment must be vacated as this present time, because the government has failed to prove beyond a reasonable doubt, that the petitioner actively employed the firearm as required by **Bailey v. United States,**

-26-

supra. The petitioner contends that he is actually innocent of use and carrying a firearm during in relation to a drug trafficking crime, moreover, the court's jury instructions were fatally flawed and amounted to structural error.

The petitioner contends that he has been deprived of his Fifth and Sixth Amendment Right directly under the Constitution. The Sixth Amendment right to counsel is the right to effective assistance of counsel. See **McMann v. Richardson**, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Counsel can deprive a defendant of the right to effective assistance of counsel by failing to render **"adequate legal assistance"**. See **Cuyler v. Sullivan**, 466 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333. The petitioner asserts that his attorney's deficient performance and assistance has resulted in the conviction of one who is actually innocent of the crime.

The law has long since been established that the miscarriage of justice exception to cause serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty." **Stone v. Powell**, 428 U.S. at 492-93, n.31, 49 L.Ed.2d 1067, 96 S.Ct. 3037, guaranteeing that the ends of justice will be served in full. The Supreme Court has reasoned in numerous decisions that "a claim of actual innocence are claims which are extraordinary when a constitutional violation has probably caused the conviction of one innocent of the crime." We have described the class of cases as implicating a fundamental miscarriage of justice. See **Murry v. Carrier**, supra, at 485, 91 L.Ed.2d 397, 106 S.Ct. 2639.

-27-

Justice Blackmum, writing for himself, Justice Stevens and Justice Souter, had noted the distinct possibility that the continued incarceration of an innocent person must hace recourse to the judicial system. See **Herrera v. Collins,** 506 U.S. 390, 432, n.2, 113 S.Ct. 853, n.2, 122 L.Ed.2d 203 (1993)(Blackmum, J. dissenting)(explaining that it may violate the 8th Amendment to imprison someone who is actually innocent; but declining to address the question, because the court was not asked to decide in that case whether petitioner's continued imprisonment would violate the constitution if he actually is innocent); **Id.** at 432-433, 111 S.Ct. 887.

In **Sawyer v. Whitely**, 505 U.S. 333, 120 L.Ed.2d 269, 112 S.Ct. 2514 (1992). The court dealt with the most lenient of the three possibilities which would be to allow the showing of **"actual innocence"** to extend not only yo the elements of the crime, but also the existence of aggravating factors, and to mitigating evidence that bore not on the defendant's eligibility to receive the death penalty, but on the ultimate discretionary decision between the death penalty and life imprisonment.

In **Bousley v. United States,** 523 U.S. 614, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998). The court went beyond the generous exception in a certain class of cases; cases that have gone to trial. There we have held "even in the absence of a showing of cause for the procedural default," habeas corpus relief will be granted; "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." See **Schlup v. Delo,** supra, at 321, 130 L.Ed.2d 808, 115 S.Ct. 851 (internal quotation marks omitted).

In **Bailey v. United States,** 116 S.Ct. 501 (1995), the Supreme
Court held that: That, to sustain a conviction under the "use"
prong of § 924(c)(1), the Government must show that the defendant
actively employed the firearm during and in relation to the pre-
date crime. Under this reading, "use" includes the acts of brand-
ishing, displaying, bartering, stricking with, and firing or att-
empting to fire, a firearm, as well as the making of a reference
to a firearm in a defendant's possession. It does not include
mere placement of a firearm for protection at or near the site
of a drug crime or its proceeds of paraphernalia, nor the nearby
concealment of a gun to be at the ready for an imminent confront-
ation. **Footnote 1/**

In **United States v. Range,** 94 F.3d 614 (11th Cir. 1996) the
government conceded that the evidence is insufficient to support
a conviction for "use" of a firearm after **Bailey v. United States,**
116 S.Ct. 501, 505, 133 L.Ed.2d 472 (1995)(requiring proof of
active employmentof the firearm in the commission of the offense
to establish "use" under 18 U.S.C. § 924(c)(1).

Here, the district court never instructed the jury that the
government had to prove that the petitioner actively employed the
firearm in order for the government to obtain a conviction.

The petitioner contends that the court erred in failing to

---

**1/Footnote:** Section 924(c)(1)'s language instead indicates that Congress in-
tended "use" in the active sence of "to avail oneself." **See Smith v. United
States,** 508 U.S.___, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993).

to provide a correct definition of **"use"** and **"carry"**, thus, petitioner was prejudiced by the **"Carring"** charge because it was erroneous in omitting an essential element, i.e., that the firearm was actively employed **"during and in relation to the commission of the offense"**. The petitioner relies on <u>**United States v.**</u> <u>**v. Stewart**</u>, 779 F.2d 538 (9th Cir. 1985); and <u>**United States v.**</u> <u>**Mendoza,**</u> 11 F.3d 126 (9th Cir. 1993), holding that failure to instruct the jury on the correct elements of Section 924(c)(1) is constitutional error. **Id.** at 126.[Footnote 2/]

Without further delay the petitioner bring's to this Court's atention that structural error has long existed. As settled by the Supreme Court, recognizing that without certain basic or structural protections, a criminal trial or proceeding cannot reliably serve its function as a vehicle for determining guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. **See** <u>**Rose v. Clark,**</u> 478 U.S. 570, 577-78, 106 S.Ct. 3101-06, 92 L.Ed.2d 460 (1986). Such structural errors apply to guilty pleas as well. Due, to the nature of structural error, whether a defendant objects or fails to object to such error is simply irrelevant,

The Supreme Court has recently shed light on the manner in which to analyze structural error. **See** <u>**California v. Roy,**</u> 136

---

Footnote 2/:  **Bailey v. United States,** supra, required the government to show proof of **"active employment"** of the firearm in the commission of the offense to establish "use" under § 924(c)(1), Albeit, the record is most-certainly void of any jury instruction which tracks the language of the active employment as established by **Bailey.**

L.Ed.2d 266 (1996). In **Roy,** the Supreme Court held:

> "[t]he specific error at issue here, an error in the instruction
> that defined the crime is as easily characterized as a misdiscription
> of an element of the crime as it is characterized as an error of
> omission. **Id.** at 117 S.Ct. 339.

Unlike the defendant in **Roy,** the petitioner here makes the
the same contention that the error at issue here, is of the struct-
ural sort that defies analysis of harmless error. The jury has
been misinformed and misdirected in reference to the true nature
and elements of his § 924(c)(1) offense.

The petitioner contends that he has been prejudiced and his
attorney's performance and assistance was constitutionally ineff-
ective for failing to raise the petitioner's actual innocence
claim in the district court and/or on direct appeal meets the
first prong of the test in **Strickland.** But, for counsel's unpro-
fessional errors the outcome of the proceeding would have been
different here the petitioner's trial would have been different).
The petitioner has established both prongs of the test in **Strick-
land,** a reasonable probability exists here, which is a probability
sufficient to undermine confidence in the outcome.

The Supreme Court warned lower Court's that **"a showing that
the performance of a defendant'S lawyer's assistance departed
from constitutionally prescribed standards requires a new trial
regardless of whether the defendant suffered demonstrable pre-
judice thereby." Id.** at 718, 80 L.ed.2d 647, 104 2052.

For the following reasons stated in the present argument
the petitioner's § 924(c)(1) conviction must be vacated and the
case remanded back to the district for a evidentiary hearing.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### FOR TRIAL AND APPELLATE COUNSEL(S) FAILURE TO RAISE IN THE DISTRICT COURT AND/OR FAILURE TO PRESERVE FOR APPELLATE PURPOSES THE PETITIONER'S APPRENDI CLAIM WHERE THE DISTRICT COURT HAVE VIOLATED HIS FIFTH AND SIXTH AMENDMENT RIGHTS

The petitioner contends that his trial and appellate counsel's are rendered ineffective for failing to raise the petitioner's **Apprendi,** claim in the district court and/or on direct appeal. The petitioner contends that his trial attorney's assistance and performance in the district court was clearly deficient, for failing to keep the government to it's burden of proof at the petitioner's trial. Thus, counsel should have known that **Apprendi,** required the government to submit drug type and quantity elements to the jury to be proven beyond a reasonable doubt. *See* **Apprendi Id.** Counsel allowed the petitioner to be convicted based upon incompetent evidence in regards to the drug counts in which the jury convicted the petitioner without being correctly instructed on the requisite elements of the petitioner's 841(a)(1) offenses. By counsel allowing the government do away with the **Apprendi,** requirements it seams as if counsel was attempting to circumvent the Supreme Court's mandatory requirements that drug type and quantity are elements of a Section 841 offense. **Id. Apprendi.** The petitioner did not waive his right to have a jury determine drug type and quantity elements, thus, counsel just omitted the petitioner's issue based on his incompetent performance and assistance, which allowed the petitioner to be erroneously convicted based upon a non-existent offense,...i.e...the bogus amounts of drug that was not submitted to the jury. Considering the fact that a miscarriage of justice exists in the case at

bar, the error cannot be attributed to the petitioner because his attorney performed ineffectively and the petitioner was duly prejudiced and denied of his right to a fair.

The petitioner also contends that his appellate attorney is rendered ineffective for failing to raise the petitioner's **Apprendi** claim on direct appeal. The petitioner brings to this Honorable Court's attention that his attorney of record in which represented him on his direct appeal present frivolous argument's to the Court of Appeals, which lacked merits, thus, when the record in the district was clear showing that the petitioner has standings to raise **Apprendi** because of the district court's errors.

In order to prove ineffective assistance of counsel, the defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that, but for counsel's errors, **"there is a reasonable probability that the result of the proceeding would have been different".** See **United States v. Pease,** 240 F.3d 938, 941 (11th Cir. 2001). The petitiioner had a right to effective assistance of counsel on his direct appeal. See **Heath v. Jones,** 941 F.2d 1126, 1130 (11th Cir. 1991).

In the case of **Eagle v. Linahan,** 279 F.3d 926 (11th Cir. 2001), the Eleventh Circuit overturned the conviction of a defendant where the defendant received ineffective assistance of counsel on direct appeal. In that case, in the trial court, counsel raised a **Batson** challenge to the jury selection process. The trial court noted that he thought both sides used preemptory challenges to remove

a particular race from the jury, but denied the motion or a
hearing on the matter. However, on appeal, this issue was not
raised. The court found that there was a valid **Batson** challenge,
and that the trial court had violated **Batson's** tenants. The court
could find no valid reasons why appellate counsel failed to raise
the issue, and therefore, reversed and remanded the defendant's
case, based upon this ineffective assistance of counsel claim.

The petitioner contends that counsel was ineffective for
failing to address the petitioner's **meritorious Apprendi issue**
to the appellate court. Thus, petitioner's **Apprendi** claim entitled
the petitioner to relief, and his attorney failure to raise the
petitioner's **Apprendi** was clearly ineffective and his performance
and assistance was constitutionally ineffective. The petitioner
asserts that he was prejudiced, but, for his attorney's deficient
performance and assistance **"a reasonable probability exist here,"**
which is a probability sufficient to undermine confidence in the
outcome. The petitioner's attorney's failure to raise the petit-
ioner's **Apprendi** claims, meets the first prong under **Strickland**,
as the petitioner was duly prejudiced, but for counsel's unpro-
fessional errors, the outcome of the proceeding would have been
different (**here the petitioner's trial and appeal would have been
different**). The petitioner has established both prongs of the test
in **Strickland,** and the petitioner is entitled to relief and a
evidentiary hearing on the merits of this claim.

For the following reasons stated in the present argument the
petitioner is entitled to relief and a evidentiary hearing.

-34-

## CONCLUSION

In Conclusion, the petitioner stated that his § 2255 motion to vacate, set-aside and correct conviction and sentence should be granted, as the petitioner's claims are not procedurally barred, frivolous and are mostcertainly cognizable by way of Section 2255. The petitioner has by far established that a miscarriage of justice existed when he was continueously denied of his constitutional right at every stage of the proceedings, pre-trial, trial, sentencing, and on direct appeal that his attorney's performed ineffectively at all stages of the proceedings.

**WHEREFORE,** the petitioner request that a Evidentiary Hearing is needed in this matter and that his Section 2255 motion to vacate, set-aside and correct conviction and sentence should be granted in light of the interest of justice.

Respectfully Submitted,

Shelby K. Moore, <u>pro-se</u>,

## CERTIFICATE OF SERVICE

I, do hereby certify that a true and correct copy of the afore-mention § 2255 motion, has been sent to the following parties listed below by way of United States Postal Services prepaid for delivery on this_____10th_____day of__January_____,in the year of 2006:

ASSISTANT UNITED STATES ATTORNEY
ATTN: JANICE LECLAINCHE
500 AUSTRALIAN AVENUE, SUITE 400
WEST PALM BEACH, FLORIDA 33401

Shelby K. Moore, pro-se,
Reg. No. 71907-004
Federal Correctional Complex-USP
P.O. BOX 1033
Coleman, Florida 33521-1033